Gibson, J.,
concurring in paragraphs one, two, four and five of the syllabus. Esther Antill, wife of the accused, and the victim, in the instant case, did not prefer charges against her husband. She refused to be sworn at the trial of her husband and was incarcerated in the county jail until she was willing to testify. If the testimony of Mrs. Antill was inadmissible, there was insufficient evidence to convict the accused. Thus, the crucial issue in this case is whether a wife can be compelled contrary to her wishes to testify against her husband in a criminal proceeding for an alleged assault upon her.
Generally at common law a wife and husband are incompetent as witnesses for or against each other in either civil or criminal proceedings. 97 Corpus Juris Secundum, 469, Witnesses, Section 75. In Ohio, the common-law rule respecting the competency of spouses as witnesses in criminal proceedings was changed by Section 2945.42, Revised Code, which provides:
“No person is disqualified as a witness in a criminal prosecution by reason of' his interest in the event thereof as a party or otherwise, or by reason of his conviction of crime. Husband and wife are competent witnesses [1] to testify in behalf of each other in all criminal prosecutions, and [2] to testify against each other in ■all actions, prosecutions, and proceedings [a] for personal injury of either by the other, [b] bigamy, or [c] failure to provide for, neglect of, or cruelty to their children under sixteen years of age. [3] A wife may testify against her husband in a prosecution under section 3113.01 or 3113.03 of the Revised Code for neglect or abandonment of such wife. Such interest, conviction, or relationship may be shown for the purpose of affecting the credibility of such witness. Husband or wife .shall not testify concerning a [1] communication made by one to the other or [2] act done by either in the presence of the other, during coverture, unless [a] the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or [b] in case of personal injury by either the husband or wife to the other, or [c] bigamy, or [d] failure to provide for, or neglect or cruelty of either to their *69 children under sixteen years of age, or [e] neglect or abandonment of such wife under such sections. The presence or whereabouts of the husband or wife is not an act under this section. The rule is the same if the marital relation has ceased to exist.” (Emphasis added.)
The purpose of the general rule of exclusion, both at common law and under the statute, is to secure domestic tranquility. Such is to be attained by encouraging, rather than discouraging, confidences between spouses, so that each may freely make disclosures to the other and may advise and consult with one another as to any matter or act, secret or otherwise, that may affect the family unit. 56 Ohio Jurisprudence (2d), 641, Witnesses, Section 222.
The statute, which is in derogation of the common law, is to be strictly construed. The statute does not make the wife a competent witness against the husband generally in all criminal cases. State v. Orth (1908), 79 Ohio St., 130. The General Assembly, having provided that the wife is competent as a witness in specifically enumerated cases, clearly did not intend to remove the disqualification in cases not mentioned. State v. Goodin (1938), 60 Ohio App., 362; Rosser v. State (1931), 10 Ohio Law Abs., 69.
Clearly, if the wife wishes to testify against her husband in one of the cases excepted from the general exclusion, e. g., failure to provide for such wife, or bigamy, or in case of personal injury by either husband or wife to the other, she may do so because by statute she is legally qualified or competent. But to say that by the statute a wife is legally qualified or competent to testify against her husband does not mean, unless this court says it does, that she may be compelled to testify against him. In my opinion, the proposition that a husband or wife, being legally competent or qualified as witnesses, may, if they so elect, testify against one another in the excepted cases enumerated in the statute, and the proposition that they must testify against one another particularly in an assault case, even if it be considered a case of personal injury by either to the other, which I do not believe it to be, are antipodal.
It has been suggested on the basis of In re Story (1953), 159 Ohio St., 144, and 58 American Jurisprudence, 134, Witnesses, *70 Section 191, that it is not optional with either husband or wife to testify or not,' but, if presented as a witness, he or she may be compelled to testify against the other. However, In re Story involved the problem of compelling a police officer to testify about records in his control rather than that of compelling a spouse to testify against the other.
The assertion contained in 58 American Jurisprudence, ibid., rests upon Turner v. State (1882), 60 Miss., 351, 45 Am. Rep., 412, and Bramlette v. State (1886), 21 Tex. App., 611, 2 S. W., 765. In fact, shortly after the decisions in the foregoing cases, Alabama, in Johnson v. State (1891), 94 Ala., 53, 10 So., 427, reached the same conclusion. This rule was altered by statute. Section 311, Title 15, Alabama Code. Only two additional cases have been found sanctioning compulsory testimony of one spouse against the other. Wyatt v. United States (1960), 362 U. S., 525, approved of compelling a wife to testify against her husband in a Mann Act prosecution, where the wife was the prostitute. The California Court of Appeals in Young v. Superior Court of Alameda County (1961), 190 Cal. App. (2d), 759, 12 Cal. Rep., 331, sanctioned the forcing of a husband to testify against his wife.
To the best of my knowledge, no other state has ruled that a wife may be compelled, contrary to her wishes, to testify against her husband. But in addition to the Alabama statute, cited above, at least two other states have enacted statutes preventing the state from compelling one spouse to testify as a witness against the other. Section 38-1604, Georgia Code; Section 546.260, Missouri Revised Code 1949. In addition, two justices joined in the dissent of Mr. Chief Justice Warren in Wyatt v. United States, supra, finding it difficult to understand why the government must have the power to protect the wife against herself by forcing her to testify against her husband. In my opinion, this course of decision by the overwhelming majority of jurisdictions represents sound public policy.
If this wife refuses to testify against her husband and continues to live with him, at least the family unit, father, mother, and six children, remains intact, but, if she is compelled to testify, the husband may be taken to prison during which time *71 the family unit will he disrupted. There is greater likelihood that the unit having been disrupted will not go back together. Surely any interest the state may have in punishing a husband, who may be guilty of assault upon his wife, is inferior to the interest the state has in maintaining domestic tranquility, at least where the wife is unwilling to voluntarily testify against her husband.